EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: | 2022 TSPR 79 |
| Elaine M. Vélez Torres (TS-12,858) | 209 DPR ___ |

Número del Caso: AB-2020-48

Fecha: 23 de junio de 2022

Abogada de la promovida:

       Lcda. Daisy Calcaño López

Oficina de Inspección de Notarías:

       Lcdo. Manuel E. Ávila De Jesús
       Director

Materia: Conducta Profesional – Suspensión inmediata de la notaría por el término de 3 meses por infracciones a los Arts. 2, 14 y 15(f) de la Ley Notarial de Puerto Rico, al Art. 63 de la anterior Ley de Hipotecaria de 1979 y a los Cánones 12, 18, 19 y 38 del Código de Ética Profesional.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

Elaine M. Vélez Torres
     (TS-12,858)

AB-2020-48

Conducta
Profesional

*PER CURIAM*

En San Juan, Puerto Rico, a 23 de junio de 2022.

Una vez más tenemos la obligación de disciplinar a una abogada-notaria por conducta antiética e incumplimiento con las leyes en el ejercicio de la notaría. En particular, por infracciones a los Arts. 2, 14 y 15(f) de la Ley Notarial de Puerto Rico, *infra*, al Art. 63 de la anterior Ley Hipotecaria y del Registro de la Propiedad de 1979, *infra*, y a los Cánones 12, 18, 19 y 38 del Código de Ética Profesional, *infra*.

Evaluadas las circunstancias del caso, concluimos que procede la suspensión inmediata de la Lcda. Elaine M. Vélez Torres (licenciada Vélez Torres, notaria o promovida) del ejercicio de la notaría por un término de tres (3) meses. Veamos.

I

La licenciada Vélez Torres fue admitida al ejercicio de la abogacía el 13 de julio de 1999 y prestó juramento como notaria el 10 de agosto de 1999. El 9 de marzo de 2020, el Sr. Ismael Ruiz Dones (señor Ruiz Dones o promovente) presentó una queja en contra de la notaria.

En síntesis, el señor Ruiz Dones alegó que el 29 de diciembre de 2000 la promovida autorizó el otorgamiento de la Escritura Núm. 10 sobre compraventa (Escritura) mediante la cual le compró a la Sra. Nélida Dones Contreras (señora Dones Contreras o vendedora) una propiedad inmueble sita en el Municipio de San Lorenzo.[1] Además, indicó que dicha Escritura se presentó en el Registro de la Propiedad (Registro) en el 2009 y se notificó una falta en el 2013; que dio seguimiento al asunto y luego, como se encontraba en Estados Unidos, entendió que todo se había resuelto, pero no fue así. Añadió que regresó al Registro y allí le informaron que la falta subsistía debido a que ni la señora Dones Contreras ni su representante legal -la licenciada Vélez Torres- habían realizado gestión alguna en cuanto a la Escritura pendiente de inscripción.

Asimismo, el promovente expresó que en el 2018 fue por segunda ocasión al Registro y allí le informaron que la hermana de la vendedora había retirado la Escritura. Así

---

[1] La propiedad inmueble se identifica como la Finca Núm. 11,667 y consta inscrita al Folio 181 del Tomo 223 del Registro Inmobiliario Digital, Sección de Caguas II.

las cosas, acudió a la residencia de ésta, quien le entregó la Escritura. Adujo el promovente que por esta razón conservaba el instrumento público en su poder. Posteriormente, el personal del Registro le notificó al señor Ruiz Dones que se quedara con la Escritura debido a que los aranceles que le acompañaban habían caducado. Más adelante, el promovente se orientó con una abogada, quien le manifestó que probablemente la transacción no logró acceso al Registro debido a una alegada deuda en la extinta Administración de Reglamentos y Permisos (ARPe). Finalmente, expuso que deseaba que el asunto se resolviera con prontitud, pues ya habían transcurrido más de veinte (20) años desde que se otorgó la Escritura, interesaba construir una casa en el terreno y continuaba pagando contribuciones al Centro de Recaudación de Ingresos Municipales (CRIM) sin darle uso a la propiedad.

Luego de la concesión de varias prórrogas, la notaria contestó la queja el 13 de octubre de 2020. En resumen, planteó que cuando recibió la queja en su contra procedió a atender el asunto con el fin de ayudar al señor Ruiz Dones con su situación, toda vez que aseguró que la no inscripción de la Escritura se debió a unas faltas señaladas en unos documentos anteriores otorgados por el Lcdo. Gilberto Cuevas Vélez (licenciado Cuevas Vélez) y no por ella. Así pues, añadió que realizó varias gestiones para ayudar al promovente a conocer por qué no se habían corregido esas faltas, incluyendo visitas y llamadas a la señora Dones

Contreras y miembros de la Sucesión Dones Contreras. Además, les notificó sobre la queja presentada, y quedaron en hacer gestiones y comunicarse con el señor Ruiz Dones para proceder a corregir las faltas señaladas en los documentos otorgados previo a la Escritura.

Asimismo, expuso que en varias ocasiones intentó comunicarse con el licenciado Cuevas Vélez por vía telefónica y por correo electrónico, pero no logró contactarlo. Ante lo cual, dejó mensaje con su secretaria y envió comunicación a la dirección de correo electrónico registrada en el portal del Poder Judicial de Puerto Rico.

De igual forma, la notaria enfatizó que el promovente es primo de la vendedora y que, al momento de adquirir la propiedad objeto de la mencionada Escritura, éste conocía que el inmueble estaba pendiente de inscripción a favor de la señora Dones Contreras. Sobre esto, mencionó que ello surgía del párrafo primero de la Escritura, en el cual se consigna que "[a]l presente dicha segregación [está] pendiente de inscripción a favor de la LA VENDEDORA".[2] También añadió que en la parte de la *Aceptación y Advertencias* en la Escritura incluyó, en lo pertinente, lo siguiente:

> La Notaria Autorizante ha advertido ampliamente a los otorgantes, especialmente a **EL COMPRADOR,** de la necesidad, importancia y conveniencia de que esta escritura pública sea otorgada conforme al contenido de un estudio de título reciente, de manera que el mismo refleje el estado registral de la Finca objeto de esta

---

[2] *Contestación a la Queja*, Anejo I, pág. 2.

compraventa.  No empece a las advertencias de esta Notaria **EL COMPRADOR** ha manifestado su interés en que se otorgue la presente escritura pública y el no interés en la realización del estudio de título.

Las partes manifiestan que por tratarse de un negocio entre parientes asumen los riesgos de otorgar dicha escritura sin el correspondiente estudio de título y liberan de toda responsabilidad a la Notaria que autoriza esta escritura pública.  (Negrillas en el original).[3]

La licenciada Vélez Torres también expresó que el señor Ruiz Dones entró en la inmediata posesión y disfrute del inmueble una vez se otorgó la Escritura en el 2000, y realizó trámites en el CRIM relacionados con el cambio de dueño y la asignación de un número de catastro.  Además, reconoció que en el 2013 el Registro le notificó que la Escritura otorgada el 29 de diciembre de 2000 tenía ciertas faltas que impedían su inscripción.[4]  Afirmó que ésto se debió a unos documentos previos presentados por el licenciado Cuevas Vélez y aclaró que la Escritura que ella otorgó no tenía faltas.[5]

---

[3]    *Contestación a la Queja*, Anejo I, pág. 4.

[4]    En específico, el Registro de la Propiedad (Registro) detalló lo siguiente en cuanto a las faltas:

Esta escritura queda impedida por los documentos previos presentados a los [A]sientos 168, 32 y 1235 [de los] [D]iarios 568, 497 y 609[,] respectivamente[,] el cual se notificó en esta misma fecha por defecto. Documentos pendientes: 168/568-86/463-230/496-32/497-1235/609-199/624-335/632-1161/644[.] *Contestación a la Queja*, Anejo IV.

[5]    Según surge de la notificación de falta por parte del Registro, la Lcda. Elaine M. Vélez Torres (licenciada Vélez Torres, notaria o promovida) presentó la Escritura Núm. 10 sobre compraventa (Escritura) el 27 de abril de 2009 al Asiento 1161 del Libro 644 del Diario de Operaciones, Entrada Número 2746, de la Sección de Caguas II del Registro.  Además, se hizo constar que la falta se notificó el 6 de septiembre de 2013. *Contestación a la Queja*, Anejo IV.

Por último, la notaria expuso que tan pronto recibió la notificación de falta procedió a informarlo a las partes para que pudieran darle seguimiento al licenciado Cuevas Vélez, de forma tal que se corrigieran los defectos señalados y así se pudiera inscribir la Escritura. Ante esto, adujo que ellos quedaron en resolver la situación y que los documentos, incluyendo la Escritura, fueron retirados por miembros de la Sucesión Dones Contreras para evitar que caducaran los aranceles. Por todo lo anterior, la licenciada Vélez Torres nos solicitó la desestimación de la queja presentada en su contra.

El 26 de febrero de 2021, referimos el asunto a la Oficina de Inspección de Notarías (ODIN) para que realizara su investigación y presentara el informe correspondiente. Cumpliendo con lo anterior, el 10 de febrero de 2022 la ODIN emitió su *Informe*, en el que expuso que la notaria infringió los Arts. 2, 14 y 15(f) de la Ley 75 de 2 de julio de 1987, según enmendada, conocida como Ley Notarial de Puerto Rico (Ley Notarial), 4 LPRA secs. 2002, 2032 y 2033, el Art. 63 de la derogada Ley Núm. 198 de 8 de agosto de 1979, según enmendada, conocida como Ley Hipotecaria y del Registro de la Propiedad de 1979 (Ley Hipotecaria de 1979), 30 LPRA ant. sec. 2266,[6] así como los Cánones 12, 18, 19 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX.

---

[6]    Valga mencionar que al momento en que la licenciada Vélez Torres otorgó la Escritura Núm. 10 sobre compraventa otorgada el 29 de diciembre de 2000 (Escritura), regía la Ley Núm. 198 de 8 de agosto de 1979, según enmendada, conocida como Ley Hipotecaria y del Registro de la Propiedad

Como parte de su *Informe*, la ODIN reseñó los asuntos relacionados con la queja, la contestación a la queja y comunicaciones posteriores. Además, incluyó una relación de hechos muy completa, en la cual -en lo pertinente- se expresa lo siguiente:

1. El 23 de diciembre de 2000, se otorgó la Escritura Núm. 117 sobre *Segregaciones y Adjudicación* ante el notario Gilberto Cuevas Vélez. En esta comparecieron los integrantes de la Sucesión del Sr. José Dones Ruiz, compuesta por sus hijos Nydia Milagros, Naida Julia, Ercilia, Nélida y José David, todos de apellidos Dones Contreras, así como su viuda, la Sra. Julia Contreras Rodríguez. En el instrumento público, las partes comparecientes expresaron que el objeto de esta era lotificar y adjudicar los lotes del siguiente bien inmueble perteneciente en común proindiviso:
   . . . . . . . .

2. En el párrafo TERCERO de la Escritura Núm. 117 de 2000 se expresó que la Finca Núm. 11,667 de San Lorenzo fue mensurada, resultando su cabida en una menor. Tal aspecto fue corregido en un proceso celebrado ante la extinta ARPe, quien aprobó la lotificación que se realizaría del inmueble con la cabida corregida. La nueva descripción del inmueble se relaciona a continuación:
   . . . . . . . .

3. En el párrafo CUARTO de dicha escritura se expresó que los comparecientes deseaban lotificar la finca antes descrita y por ese medio lotificaban y segregaban los lotes que se describirían [en] el párrafo siguiente de[l] instrumento público para que pasaran a formar lotes independientes. Se reiteró que dicha lotificación fue aprobada por la ARPe, según el informe 01-48-LS-054, número de radicación 99-48-B-803-HPLS de 14 de julio de 2000. Anejo XII.

---

de 1979, 30 LPRA ant. sec. 2266. Actualmente rige la Ley Núm. 210 de 8 de diciembre de 2015, según enmendada, conocida como Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico (Ley del Registro de la Propiedad Inmobiliaria), 30 LPRA sec. 6001 *et seq.*

4. En el párrafo QUINTO de la Escritura Núm. 117 de 2000, se realizó la descripción de las lotificaciones de los predios segregados en el instrumento público.  En particular, se relacionó la descripción registral de los lotes [n]úmeros 1, 2, 2-A, 2-B, 3, 4, 5, 6 y 6-A, al igual que los lotes A y B. Anejo XII.

5. Luego de describirse los lotes, se expresó que estos se segregaban de la finca original o matriz por medio de dicha escritura, siendo estos adjudicados según lo expuesto en el párrafo SÉPTIMO de la Escritura Núm. 117 de 2000. Anejo XII.

6. En la Escritura Núm. 117 de 2000, se lotificó, segregó y adjudicó a la Sra. Nélida Dones Contreras el Lote Número Tres (3), con una cabida de 1530.1803 metros cuadrados.  Anejo XII.

7. El 29 de diciembre de 2000, la aquí Promovida autorizó la Escritura Núm. 10 sobre Compraventa. En este, la Sra. Nélida Dones Contreras, como titular privativa del Lote Número Tres (3) segregado (pero no inscrito), procedió a vender al aquí Promovente este por la suma de Dieciséis Mil Dólares ($16,000.00).  La descripción que surge en el instrumento público, se relaciona a continuación:

          . . . . . . . .

8. De una lectura de la Escritura Núm. 10 de 2000 surge que la promovida:

     a. no incluyó advertencia alguna sobre los efectos que pudiera tener el que la Escritura Núm. 117 de 2000 no estuviera presentada ni inscrita en el Registro;

     b. no incluyó advertencia alguna sobre el derecho de tanteo y retracto de colindantes que tenían los titulares de las fincas colindantes, quienes a su vez eran integrantes de la Sucesión Dones, a tenor con lo dispuesto en el derogado Artículo 1413 del Código Civil de 1930, 31 LPRA ante sec. 3921;

     c. asumió la responsabilidad de presentar la transacción esbozada en el negocio jurídico celebrado, de manera tal que este ganara acceso a los tomos del Registro; y

d. afirmó que las partes otorgantes decidieron que no realizar[ían] un estudio de título previo a la autorización del instrumento y que estos le relevaron de responsabilidad con respecto a ello, enfatizando que el aquí Promovente, como la parte compradora, había manifestado su interés de que se encaminara el negocio jurídico por tratarse de uno en que ambas partes asumían todo tipo de riesgo en torno a la compraventa. Anejo IV.

9. Al momento [del otorgamiento] de la Escritura Núm. 10 de 2000, la Escritura Núm. 117 de 2000 no había sido presentada en el Registro, para su oportuna calificación, inscripción y despacho. Anejos XI y XV.

10. La Escritura Núm. 117 de 2000 autorizada por el licenciado Cuevas Vélez fue presentada ante el Registro el 26 de agosto de 2003 para su calificación. La transacción quedó registrada al Asiento 168 del Libro 568 de San Lorenzo del Diario de Operaciones que custodia la Sección Segunda de Caguas II. Anejo XV.

11. La Escritura Núm. 10 de 2000 autorizada por la aquí Promovida fue presentada ante el Registro el 27 de abril de 2009 [.] [E]s decir, nueve años después de su autorización. Tal trámite fue realizado por el Sr. Gerardo Ayala. Anejo XIII.

12. El 6 de septiembre de 2013[,] la Escritura Núm. 117 de 2000 fue notificada por la Registradora de la Sección Segunda de Caguas. En su escrito oficial, la funcionaria informó las siguientes faltas que impedían su inscripción:

. . . . . . . .

13. El 6 de septiembre de 2012[,] la Escritura Núm. 10 de 2000 fue notificada por la Registradora de la Sección Segunda de Caguas. En su escrito oficial, la funcionaria informó las siguientes faltas que impedían su inscripción:

Esta escritura queda impedida por los documentos previos presentados a los [A]sientos 168, 32 y 1235 [de los] [D]iarios 568, 497 y 609[,] respectivamente[,] el cual se notificó en esta misma fecha por defecto. Documentos pendientes: 168/568-86/463-230/496-32/497-1235/609-199/624-335/632-1161/644. Anejo VI.

14. El 21 de noviembre de 2013, la Sra. Lydia Dones retiró las copias certificadas presentadas en el Registro de las Escrituras Núm. 117 de 2000 y Núm. 10 de 2000, conjunto con sus respectivos comprobantes de inscripción, entre otros documentos. Anejo XV.

15. Posterior a la presentación de la Queja, con fecha del 4 de septiembre de 2020[,] la Promovida hizo envío al licenciado Cuevas Vélez de un escueto correo electrónico a la siguiente dirección […]. La Promovida indicó que obtuvo esa dirección en el Portal de la Rama Judicial. Mediante dicha comunicación, le solicitó reunirse con este para conocer el estatus de corrección de unos instrumentos públicos autorizados por el fedatario relacionados con la Sucesión Dones. Afirmó, además, que esta Superioridad le estaba requiriendo aclarar la dilación en la calificación de un instrumento autorizado por esta y cuyo tracto confería los negocios autorizados por el letrado. A esos fines, manifestó la importancia de celebrar a la brevedad una reunión o sostener una conversación telefónica. Anejo V.

16. La Promovida nunca llegó a reunirse con el licenciado Cuevas Vélez ni hablar con este. Sostuvo que le dejó mensajes con su secretaria vía telefónica en fechas que no especific[ó] y que tales gestiones resultaron infructuosas. Anejos III y XI.

17. Al momento de rendir el Informe que nos ocupa, tanto las transacciones jurídicas esbozadas en la Escritura Núm. 117 de 2000 otorgada ante el licenciado Cuevas Vélez como aquella esbozada en la Escritura Núm. 10 otorgada ante la aquí Promovida no constan presentadas en el Registro Inmobiliario Digital para su oportuna calificación, inscripción y despacho. [Anejo] XX. (Negrillas, énfasis y escolios omitidos).[7]

En su *Informe*, la ODIN expuso que la promovida no se desempeñó con la diligencia requerida al autorizar la Escritura. Además, añadió que ésta justificó lo ocurrido

---

[7]   *Informe de la Oficina de Inspección de Notarías*, págs. 7-12.

limitando el asunto a la situación relacionada con la Escritura 117 de 2000 autorizada por el licenciado Cuevas Vélez, cuya inscripción era necesaria para establecer el tracto registral del negocio jurídico otorgado ante ella.

Como parte de su evaluación, la ODIN indicó que la licenciada Vélez Torres no había sido objeto de procedimiento disciplinario alguno en relación con el ejercicio de la notaría. En vista de lo anterior, recomendó que suspendiéramos a la notaria del ejercicio de la función notarial por el término de seis (6) meses o, en la alternativa, por el término de tres (3) meses.

El 22 de febrero de 2022, emitimos una *Resolución* mediante la cual concedimos un término de veinte (20) días tanto al promovente como a la promovida para que se expresaran en torno al *Informe* presentado por la ODIN y expresamos que, en caso de no comparecer en dicho término, se entendería que se allanaban a las recomendaciones incluidas en el mismo.

Más adelante, el 1 de marzo de 2022, se presentó una moción para notificar que la licenciada Vélez Torres sería representada por el Cuerpo de Procuradores del Colegio de Abogados y Abogadas de Puerto Rico. Luego de la concesión de varias prórrogas para reaccionar al *Informe* de la ODIN,[8] el 28 de abril de 2022 la notaria -por conducto de su

---

[8] Las peticiones de término adicional para reaccionar al *Informe* de la ODIN fueron presentadas en estas fechas: 1 de marzo de 2022, 16 de marzo de 2022 y 6 de abril de 2022.

representante legal- presentó su *Reacción al Informe de la Oficina de Inspección de Notarías*. En esencia, reiteró que la Escritura no logró su inscripción en el Registro dado a que una escritura autorizada y presentada por el licenciado Cuevas Vélez (la Escritura Núm. 17 de 2000) no pudo ser inscrita debido a que las faltas notificadas a éste nunca fueron corregidas. A raíz de esto, no hubo tracto registral y se afectó la inscripción de la Escritura.

La promovida añadió que, con el fin de resolver la situación relacionada con la Escritura, realizó varias gestiones, las cuales pormenorizó en su escrito. En particular, señaló que luego de múltiples vicisitudes para conseguir los documentos que fueron retirados del Registro en el 2013 por la Sra. Nydia Dones Contreras -hermana de la vendedora- y que eran necesarios para atender el asunto que dio origen a esta queja, el 28 de marzo de 2022 logró comunicarse con el licenciado Cuevas Vélez y se ofreció a redactar las actas necesarias para corregir las faltas que fueron señaladas a éste en el 2013. Así pues, la notaria manifestó que el 4 de abril de 2022 el licenciado Cuevas Vélez firmó un *Acta de Subsanación* en cuanto a la Escritura Núm. 17 de 2000 otorgada por él, de forma tal que se pudiera corregir la misma y evitar así un nuevo señalamiento de falta. Al día siguiente, la promovida presentó en el Registro la Escritura Núm. 17 de 2000, el *Acta de Subsanación*

y otros documentos relacionados.  Además, expresó que -por tercera vez- presentó la Escritura en el Registro.**9**

Asimismo, la licenciada Vélez Torres expuso que el protocolo del año 2000 fue aprobado sin deficiencias y no se señalaron faltas en ninguno de los instrumentos autorizados.  Añadió lo siguiente:

> La falta de diligencia del notario que tenía que presentar su escritura previo a la escritura de la Lcda. Vélez Torres, no lo hizo a tiempo.  También el Registro de la Propiedad tardó 13 años en notificar la escritura.  Todos los relacionados al instrumento público son familia y conocían todos los aspectos del negocio jurídico y la Lcda. Vélez [Torres] incluyó una advertencia sobre el particular. Nydia Dones Contreras, hermana de la vendedora

---

**9**   La notaria indica que presentó la Escritura por primera vez el 7 de febrero de 2001 y en una segunda ocasión el 27 de abril de 2009.  Al respecto, y en lo pertinente, la promovida expresó lo siguiente en su *Reacción al Informe de la Oficina de Inspección de Notarías:*

"El asunto de epígrafe tiene su génesis en la Escritura número 10, sobre Compraventa, otorgada ante la Lcda. Vélez Torres el día 29 de diciembre de 2000.  **La misma fue presentada, por primera vez, en el Registro de la Propiedad, el 7 de febrero de 2001.  En los escritos presentados al Tribunal Supremo, la Promovida, había presentado una minuta del año 2009 como fecha de presentación inicial de la escritura antes mencionada.  Dicha presentación del año 2009 fue la segunda vez que se presentó** toda vez que en ese tiempo el Sr. Pablo Colón era la persona que le hacía las presentaciones al Registro de la Propiedad a la Lcda. Vélez Torres y a los abogados del área y éste había muerto sin entregarles recibos de presentación de las minutas entregadas y **examinando expedientes se percató que no tenía dicho recibo de presentación.  Por haber transcurrido tantos años hay detalles que la Lcda. Vélez Torres no precisaba bien".**  (Énfasis suplido). *Reacción al Informe de la Oficina de Inspección de Notarías*, pág. 2.

Precisa mencionar que más adelante en dicho escrito, la licenciada Vélez Torres hizo referencia a la minuta de presentación del 7 de febrero de 2001 y añadió la palabra "Anejo", mas no surge dicha minuta de los documentos incluidos.  En particular, la notaria manifestó lo siguiente:

"Previo a interrumpirse la comunicación entre el Sr. Oscar Jiménez, esposo de la vendedora, y la Lcda. Vélez Torres, éste le entregó, el día 10 de marzo de 2022, la copia certificada de [la] Escritura Número 10 de 2000 con la minuta de presentación del 7 de febrero de 2001 y comprobante de inscripción. **Anejo".  Íd., pág. 3.

No obstante, de un minucioso examen de los documentos incluidos como anejos en la *Reacción al Informe de la Oficina de Inspección de Notarías* presentada por la promovida, así como del expediente, no surge la mencionada minuta de presentación del 7 de febrero de 2001 según alegó la promovida.

y prima del Comprador-Promovente retiró los documentos del Registro el 21 de noviembre de 2013. **Si cometí algún error fue sin intención y de forma involuntaria.** Además, **la Lcda. Vélez Torres, confió que el asunto se resolvería por las partes**[,] ya que inclusive retiraron la escritura. **No expresó exactamente todos los detalles dentro de las advertencias que les hizo a los otorgantes el día del otorgamiento,** pero fueron ampliamente advertidos de todo asunto relacionado con el negocio jurídico que estaban efectuando no empece los otorgantes eran primos y conocían perfectamente los pormenores.

.  .  .  .  .  .  .  .

La Lcda. Vélez [Torres] realizó todas las gestiones que pudo. Lamenta mucho las circunstancias que se han dado en este caso. (Énfasis suplido). *Reacción al Informe de la Oficina de Inspección de Notarías*, págs. 7-8.

Finalmente, la promovida indicó que nunca tuvo la intención de dar la impresión de que no estaba atendiendo el asunto que provocó la queja, por lo que ofreció sus disculpas. Añadió que este proceso disciplinario ha sido aleccionador y aclaró que ha cubierto -a su costo- todas las gestiones relacionadas con la presentación de la Escritura en el Registro.

Evaluados con detenimiento la queja presentada en contra de la licenciada Vélez Torres, la contestación a la queja, el *Informe* preparado por la ODIN y la reacción a dicho *Informe*, así como los demás documentos que obran en el expediente, procedemos a disponer del proceso disciplinario ante nuestra consideración.

II

A. Incumplimiento con la Ley Notarial de Puerto Rico

Como parte de nuestra facultad para regular la profesión legal en Puerto Rico, tenemos la obligación de asegurarnos de que los miembros admitidos al ejercicio de la abogacía, así como a la **notaría**, realicen sus funciones de forma responsable, competente y diligente. *In re* Villalona Viera, 206 DPR 360, 369 (2021). En particular, el notario debe ejercer su función con extremo cuidado, esmero y celo profesional debido a que está obligado a cumplir estrictamente con la Ley Notarial, 4 LPRA sec. 2001 *et seq.*, el Reglamento Notarial de Puerto Rico, 4 LPRA Ap. XXIV, y los Cánones del Código de Ética Profesional, 4 LPRA Ap. IX. Así pues, el incumplimiento con los mencionados preceptos normativos expone al notario a sanciones disciplinarias. *In re* Villalona Viera, *supra*, págs. 369-370; *In re* Sánchez Reyes, 204 DPR 548, 565 (2020).

El Art. 2 de la Ley Notarial, 4 LPRA sec. 2002, expone el principio de la fe pública notarial y dispone lo siguiente:

> El notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle[s] autoridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente

> ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento. (Corchetes en el original).

En reiteradas ocasiones, hemos expresado que el notario en Puerto Rico es custodio de la fe pública notarial, por lo que cuando "autoriza un documento da fe y asegura que ese documento cumple con todas las formalidades de ley […] y que se trata de una transacción válida y legítima". (Énfasis omitido). *In re* Pagani Padró, 198 DPR 812, 820 (2017). Por consiguiente, un documento notarial que está avalado por la dación de fe de un notario se presume que cumple con todas las formalidades de ley y brinda la confianza de que los hechos jurídicos y las circunstancias que se acreditan fueron así percibidos y comprobados por el notario o ejecutados por éste. *In re* Villalona Viera, *supra*, pág. 371.

Por su parte, el Art. 14 de la Ley Notarial, 4 LPRA sec. 2032, establece que "[l]os notarios redactarán las escrituras públicas de acuerdo con la voluntad de los otorgantes y adaptándola[s] a las formalidades jurídicas necesarias para su eficacia". Mientras, el Art. 15 de la Ley Notarial, 4 LPRA sec. 2033, instituye los requisitos generales del contenido de cualquier escritura pública. Éstos son los requerimientos formales que deben observarse en el otorgamiento y la autorización de escrituras, pues, de otra manera, su incumplimiento pudiera conllevar la nulidad o anulabilidad de las mismas. *In re* Santiago

Maldonado, 206 DPR 1029, 1041 (2021). En lo pertinente, el Art. 15(f) de la Ley Notarial, *supra*, expone lo siguiente:

> La escritura pública, en adición al negocio jurídico que motiva su otorgamiento y sus antecedentes y a los hechos presenciados y consignados por el notario en la parte expositiva y dispositiva, contendrá lo siguiente:
>
> . . . . . . . .
>
> (f) El haberles hecho de palabra a los otorgantes en el acto del otorgamiento las reservas y advertencias legales pertinentes. No obstante, se consignarán en el documento aquellas advertencias que por su importancia deban, a juicio prudente del notario, detallarse expresamente.

Al respecto, hemos manifestado que el notario tiene el deber de consignar las advertencias correspondientes al negocio jurídico en las escrituras públicas que autorice, esto para brindar las informaciones, aclaraciones y advertencias necesarias para que así los otorgantes comprendan el sentido, los efectos y las consecuencias del negocio, y se den cuenta de los riesgos que corren al celebrarlo. *In re* Santiago Maldonado, *supra*, pág. 1042; *In re* García Cabrera, 201 DPR 902, 923 (2019). Así pues, como parte de los deberes del notario al autorizar una escritura se encuentra determinar qué aclaraciones y advertencias incluir, por lo que es indispensable un análisis integral del derecho que aplica al acto o negocio jurídico particular. De esta manera, el notario puede salvaguardar su responsabilidad, ya que el incumplimiento con efectuar una advertencia importante y necesaria -según los parámetros mencionados- constituye una violación

al imperativo de custodiar la fe pública notarial, además de infringir el Art. 15(f) de la Ley Notarial, *supra*. *In re* Santiago Maldonado, *supra*, pág. 1042; *In re* García Cabrera, *supra*, pág. 924.

En reiteradas ocasiones hemos manifestado la importancia de que se realice un estudio sobre los antecedentes registrales de la propiedad antes de que el notario autorice el instrumento público. *In re* Maldonado Maldonado, 197 DPR 802, 810 (2017). Como principal custodio de la fe pública, el notario "tiene la indeclinable obligación de conocer el estado registral de la propiedad sobre la cual otorga la escritura" y, además, "tiene el ineludible deber de ilustrar a los otorgantes para lograr que éstos concurran al acto notarial en un estado de conciencia informada". *In re* Jiménez Brackel, 148 DPR 287, 294-295 (1999).

Con el fin de lograr el consentimiento informado de los otorgantes de una escritura pública que contenga un negocio jurídico sobre un bien inmueble, el notario "debe advertirles sobre la conveniencia y necesidad de realizar un estudio de título", de forma tal que puedan conocer -entre otras cosas- el titular registral, las cargas y los gravámenes que afectan la propiedad. *In re* Maldonado Maldonado, *supra*, pág. 811. Claro está, en caso de que los otorgantes no quieran que se efectúe un estudio de título, entonces el notario deberá consignar en la escritura la advertencia sobre la necesidad y conveniencia de que sí se hiciera. Íd.; *In re* Sánchez Reyes, 204 DPR 548, 568 (2020).

Por último, "[a]unque la presentación de una escritura pública al Registro de la Propiedad no es una función inherente al ejercicio del notariado, una vez el notario asume esa responsabilidad está obligado a cumplirla diligentemente. La demora injustificada y por tiempo prolongado es contraria a los postulados del Código de Ética Profesional". *In re* Maldonado Maldonado, *supra*, pág. 817.

B. Incumplimiento con la anterior Ley Hipotecaria y del Registro de la Propiedad de 1979

El notario tiene la obligación de corregir las omisiones o errores que por su falta impidieran la inscripción del acto o negocio jurídico que haya autorizado, según lo dispuesto en el ordenamiento hipotecario. El Art. 63 de la Ley Hipotecaria de 1979, *supra*, vigente para la fecha del otorgamiento de la Escritura objeto de esta queja, disponía lo siguiente:

> El notario o funcionario que por su falta cometiere alguna omisión que impida inscribir el acto o contrato, conforme a lo dispuesto en la ley, subsanará prontamente, al ser requerido, extendiendo a su costo un nuevo documento, si fuere posible e indemnizando en todo caso a los interesados de los perjuicios que les ocasionen su falta.[10]

Como vemos, la responsabilidad delegada a los notarios va unida a unos deberes éticos que procedemos a analizar.

---

[10] En lo pertinente, el Art. 240 de la vigente Ley del Registro de la Propiedad Inmobiliaria, *supra*, establece un lenguaje similar al disponer:

"El notario o funcionario que por su falta cometa alguna omisión que impida inscribir el acto o contrato contenido en el documento presentado, conforme lo dispuesto en la ley, subsanará prontamente y a su costo al ser requerido mediante notificación. De ser necesario y posible, extenderá un nuevo documento".

C. Incumplimiento con los Cánones del Código de Ética Profesional

1. Canon 12 (Puntualidad y tramitación de las causas)

El Canon 12 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 12, impone a los miembros de la profesión legal el deber de tramitar las causas encomendadas de una forma responsable, puntual y diligente. *In re* Meléndez Mulero, 2022 TSPR 3, 208 DPR ____ (2022). Como parte de ese deber ético, los abogados tienen la obligación de realizar todas las diligencias necesarias para asegurarse de no causar demoras indebidas en el trámite y resolución de las causas que se le encomienden. *In re* Lugo Quiñones I, 206 DPR 1, 10 (2021).

Así, hemos manifestado que el deber de diligencia es una obligación básica y elemental del abogado hacia su cliente. *In re* Rodríguez Lugo, 201 DPR 729, 737 (2019). En vista de esto, las actuaciones y omisiones que pongan en riesgo la causa de acción de los clientes configuran una infracción patente del Canon 12. *In re* Meléndez Mulero, *supra*; *In re* López Santiago, 203 DPR 1015, 1026-1027 (2020). Este es un deber ineludible que los abogados deben cumplir con gran recelo. *In re* Maldonado Maldonado, *supra*,          pág. 812.

2. Canon 18 (Competencia del abogado y consejo al cliente)

El Canon 18 de Ética Profesional, 4 LPRA Ap. IX, C. 18, indica específicamente que "[e]s deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en

aquella forma que la profesión jurídica en general estima adecuada y responsable".

En cuanto a la función notarial, este Tribunal ha expresado que los notarios públicos demuestran su conocimiento jurídico mediante una ejecución correcta de sus funciones notariales. *In re* Soto Aguilú, 2021 TSPR 162, 208 DPR ____ (2021). Como custodio de la fe pública notarial, el notario tiene el deber de conocer el estado registral de la propiedad sobre la cual se otorga una escritura pública para así asegurarse de que autoriza un documento eficaz y, a su vez, de que obtuvo el consentimiento informado de los otorgantes. *In re* Palmer Ramos, 195 DPR 245, 257 (2016); *In re* López Maldonado, 130 DPR 863, 865-866 (1992). En particular, hemos resuelto que un notario infringe el Canon 18 cuando autoriza un instrumento sin corroborar las constancias registrales, ya que con esa conducta incumple con su deber de constatar si la escritura pública posee defectos que impidan su inscripción en el Registro. *In re* Soto Aguilú, *supra*. Esta conducta activa una presunción irrebatible de que el notario no tuvo la competencia suficiente en cuanto a los negocios jurídicos autorizados. Íd. Además, en *In re* Ayala Oquendo, 185 DPR 572, 580 (2012), expusimos que un notario viola el Canon 18 cuando infringe las disposiciones de la Ley Notarial, pues "incurre en una práctica notarial indeseable".

De igual manera, hemos planteado que el incumplimiento con el deber de diligencia que exige el Canon 18 se relaciona

con el deber de ilustrar a las partes con explicaciones, aclaraciones y advertencias necesarias, aplicando así su conocimiento sobre el derecho vigente y, a su vez, verificando la legalidad y validez de los instrumentos públicos. *In re* Sánchez Reyes, *supra*, pág. 567.

De manera que, el deber de diligencia consagrado en el Canon 18 resulta "del todo incompatible con la desidia, despreocupación y displicencia" incurrida por un abogado al atender los asuntos encomendados por su cliente. *In re* Miranda Daleccio, 193 DPR 753, 762 (2015).

3. Canon 19 (Información al cliente)

El Canon 19 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 19, le impone a todo abogado la obligación de mantener a su cliente informado de aquellos asuntos importantes que surjan durante el trámite del asunto que le fue encomendado. Esta obligación aplica independientemente del deber de diligencia comprendido en el Canon 18. *In re* Hon. González Rodríguez, 201 DPR 174, 2010 (2018); *In re* Nazario Díaz, 198 DPR 793, 804 (2017).

Así pues, para cumplir efectivamente con el deber que impone el Canon 19 es necesario que el abogado se comunique efectivamente con sus clientes. *In re* Rosario Vázquez, 197 DPR 237, 248 (2017). Esto es, todo abogado debe cerciorarse de que su representado "esté debidamente informado de todos los asuntos importantes que se susciten en la tramitación de su caso". *In re* Miranda Daleccio, *supra*, pág. 764.

A su vez, todo representante legal debe tener en cuenta que el caso pertenece al cliente. Por lo tanto, éste tiene derecho a mantenerse informado de todos los asuntos y las gestiones importantes que se susciten en la tramitación del mismo. *In re* Hon. González Rodríguez, *supra*, pág. 211. En consecuencia, un abogado incumple con el Canon 19, por ejemplo, cuando no mantiene informado a su cliente del estado o situación procesal del caso, no le informa de un resultado adverso en la gestión encomendada, se torna inaccesible o no atiende los reclamos de información de su cliente. *In re* Lugo Quiñones I, *supra*, pág. 11; *In re* Maldonado Maldonado, *supra*, pág. 814.

4. Canon 38 (Preservación del honor y dignidad de la profesión)

Por último, el Canon 38 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 38, instituye el deber de todo abogado de exaltar el honor y la dignidad de su profesión, y de evitar hasta la apariencia de conducta profesional impropia. Esto significa que todo profesional del Derecho debe desempeñarse de forma escrupulosa y guiado por un alto sentido de responsabilidad, teniendo siempre presente la función social que ejerce y la institución que representa. *In re* Rádinson Pérez *et al.*, 204 DPR 522, 542 (2020); *In re* Rivera Rodríguez, 202 DPR 1026, 1053 (2019).

En *In re* Vázquez Margenat, 204 DPR 968, 980 (2020), expusimos que "[n]o exalta la profesión legal el notario que no se desempeñe con la cautela y el celo que demanda la

función pública del notariado". En relación con esto último, en *In re* Soto Aguilú, *supra*, añadimos que "si la controversia versa sobre la falta de competencia y diligencia por parte de un notario… y al mismo tiempo, se maltrecha la fe pública notarial, se viola también el [C]anon 38".

Esbozada la norma jurídica aplicable a los hechos antes reseñados, pasemos a examinar la conducta de la licenciada Vélez Torres.

## III

Corresponde que determinemos si la notaria infringió los Arts. 2, 14 y 15(f) de la Ley Notarial, *supra*, el Art. 63 de la anterior Ley Hipotecaria de 1979, *supra*, y los Cánones 12, 18, 19 y 38 del Código de Ética Profesional, *supra.*

De conformidad con los hechos aquí reseñados y de una evaluación del expediente de la queja, se puede colegir que la licenciada Vélez Torres tenía total desconocimiento de que la Escritura Núm. 117 de 2000 -autorizada por el licenciado Cuevas Vélez- no estaba presentada en el Registro para la fecha en que se otorgó la Escritura objeto de esta queja. Además, tampoco surge del expediente ni del instrumento público en sí que la notaria hubiese orientado y advertido de forma expresa a los otorgantes sobre este hecho particular; más aún cuando dicha transacción era sobre un negocio jurídico previo con serios efectos jurídicos, riesgos y posibles consecuencias referente a un lote de

terreno segregado. Por lo tanto, correspondía que tal advertencia se hiciera constar en la Escritura.

Ante la realidad de que no se efectuara un estudio de título previo a la autorización de la Escritura o, en la alternativa, se corroboraran los antecedentes registrales del inmueble objeto del negocio jurídico contenido en el instrumento público, así como el hecho de que no se incluyó una advertencia relativa a que la Escritura Núm. 117 de 2000 no estaba presentada en el Registro a la fecha en que se otorgó la Escritura autorizada por la notaria, nos llevan a determinar que la promovida violó los Arts. 2, 14 y 15(f) de la Ley Notarial, *supra*, y los Cánones 18 y 38 del Código de Ética Profesional, *supra*.

En cuanto a las advertencias requeridas y necesarias debido a la naturaleza de la transacción jurídica de que se trataba, es importante señalar que la licenciada Vélez Torres también omitió incluir en la Escritura la advertencia referente al retracto de colindantes de fincas rústicas, según disponían los Arts. 1413 y 1414 del Código Civil de 1930, 31 LPRA ant. secs. 3923 y 3924, vigentes a la fecha del otorgamiento de la Escritura.[11]

Asimismo, surge del expediente de la queja que la Escritura fue presentada el 27 de abril de 2009, esto es nueve (9) años luego de su autorización. Precisa mencionar

---

[11] En su equivalencia con las disposiciones del Código Civil de Puerto Rico de 2020, refiérase a los Arts. 1057 y 1058 de la Ley Núm. 55 de 1 de junio de 2020, según enmendada, 31 LPRA secs. 8873 y 8874.

que la licenciada Vélez Torres en su *Reacción al Informe de la Oficina de Inspección de Notarías* aludió a que había presentado la Escritura por primera vez el 7 de febrero de 2001, pero de un exhaustivo examen del expediente no surge una minuta de presentación de esa fecha.[12]  Del expediente tampoco surge que la notaria haya explicado las razones para dicha dilación y aún más cuando de la propia Escritura surgía la obligación de ésta de presentar el instrumento público en el Registro.[13]  Ante esto, concluimos que el mencionado transcurso de tiempo para presentar la Escritura fue excesivo y constituyó falta de diligencia por parte de la promovida al efectuar las labores encomendadas. Así pues, la licenciada Vélez Torres violó los Cánones 12 y 18 del Código de Ética Profesional, *supra*.

Asimismo, en cuanto a las gestiones realizadas para atender el asunto que desembocó en esta queja, la notaria informó que tuvo comunicación con las partes cuando recibió la notificación de falta del Registro en el 2013, pero dicha comunicación se vio interrumpida.  Posteriormente, y luego de que el señor Ruiz Dones presentara su queja en el 2020, la promovida restableció la comunicación, esta vez con el

---

[12]  Sobre este asunto, refiérase a la nota al calce número 9 de esta Opinión *Per Curiam*.

[13]  Según se hizo constar en la Escritura, "[la notaria autorizante] será responsable de presentar esta escritura ante el Registro de la Propiedad para su inscripción".  *Informe de la Oficina de Inspección de Notarías*, Anejo IV, pág. 4.

esposo de la vendedora, el Sr. Oscar Jiménez, pues ella había fallecido. Al respecto, la licenciada Vélez Torres omitió informar las fechas de las conversaciones que sostuvo, así como documentar o exponer por escrito los asuntos discutidos. De igual forma, la promovida no explicó por qué no tuvo comunicación directa con el promovente durante el periodo del 2013 al 2020 a los fines de orientarle sobre los eventos relacionados con la inscripción de la Escritura. De conformidad con el Canon 19 del Código de Ética Profesional, *supra*, la notaria tenía la obligación de mantener informado al señor Ruiz Dones sobre la situación registral surgida, así como de las gestiones que se requerían para corregir la situación. No obstante, del expediente no surge que la promovida así lo haya hecho. Así pues, concluimos que la licenciada Vélez Torres violó el Canon 19 del Código de Ética Profesional, *supra*.

Según lo expuesto, concluimos que la promovida no fue diligente al realizar las gestiones necesarias y establecer los canales de comunicación para lograr corregir la falta notificada por el Registro en cuanto a la Escritura, resultando así en una violación al Art. 63 de la anterior Ley Hipotecaria de 1979, así como a los Cánones 12, 18 y 19 del Código de Ética Profesional, *supra*.

En vista de lo anterior, corresponde que determinemos la sanción disciplinaria a imponerle a la licenciada Vélez Torres por la conducta desplegada. Al fijar la misma, procede que consideremos los factores siguientes: (1) la

reputación del abogado en la comunidad; (2) su historial disciplinario; (3) si la conducta es una aislada; (4) si medió ánimo de lucro; (5) si presentó una defensa frívola de su conducta; (6) si ocasionó perjuicio a alguna parte; (7) si resarció al cliente; (8) si demostró aceptación o arrepentimiento sincero por la conducta que le fue imputada, y (9) otros atenuantes o agravantes que surjan de los hechos. *In re* Villalona Viera, *supra*, pág. 377; *In re* Maldonado Maldonado, *supra*, pág. 818.

En la evaluación de la sanción a imponerse, consideramos como factores atenuantes que la notaria se enfrentaba a su primer proceso disciplinario en los 23 años que lleva ejerciendo la profesión legal y la notaría; que no hubo ánimo de lucro y que expresó sus más sinceras disculpas "por cualquier confusión que haya surgido en este proceso, [pues] nunca tuvo la intención de dejar de ser diligente",[14] y que ha cubierto -a su costo- todas las gestiones necesarias para viabilizar la inscripción de la Escritura.[15] Entre los factores agravantes, tomamos en cuenta que durante el proceso disciplinario la promovida reiteró que el asunto medular objeto de la queja se relacionaba con los errores que surgían de un instrumento público autorizado por otro

---

[14] *Reacción al Informe de la Oficina de Inspección de Notarías*, pág. 12.

[15] En particular, el 5 de abril de 2022 la licenciada Vélez Torres presentó la Escritura en el Registro. Previo a esto, había presentado una escritura autorizada por otro notario, así como un acta de subsanación.

notario; que no ha habido una aceptación de las faltas incurridas ni una expresión de arrepentimiento.

En consecuencia, y luego de evaluar la totalidad de las circunstancias, en virtud de nuestro poder inherente de reglamentar la abogacía, procede que impongamos como sanción la suspensión inmediata del ejercicio de la notaría por un término de tres (3) meses.

IV

Por los fundamentos antes expuestos, decretamos la suspensión inmediata de la licenciada Vélez Torres del ejercicio de la notaría por un término de tres (3) meses.

De igual forma, se le apercibe de su deber de observar de forma escrupulosa los principios éticos que se recogen en el Código de Ética Profesional, así como las disposiciones de la Ley Notarial y la Ley Hipotecaria vigentes. Asimismo, le apercibimos que en el futuro deberá actuar con mayor diligencia en el descargo de su deber como notaria. También le apercibimos que, de incurrir en otro acto que contravenga las normas antes mencionadas, estará sujeta a sanciones disciplinarias mucho más severas. Se le ordena, además, a realizar a sus expensas todos los trámites necesarios para viabilizar la inscripción de la Escritura Núm. 10 que autorizó el 29 de diciembre de 2000.

También se le impone a la licenciada Vélez Torres el deber de notificar a todos sus clientes sobre su inhabilidad para continuar representándolos y devolverles tanto los expedientes como los honorarios recibidos por trabajos de

índole notarial no realizados. De igual manera, tendrá que informar de su suspensión a cualquier agencia, entidad, foro judicial o administrativo en el que tenga algún asunto de índole notarial pendiente. Deberá acreditar y certificar ante este Tribunal el cumplimiento con lo anterior, incluyendo una lista de los clientes y los foros a quienes le notificó de su suspensión, dentro del término de treinta (30) días, contado a partir de la notificación de esta Opinión *Per Curiam* y Sentencia. No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la notaría cuando así lo solicite.

De otra parte, se ordena al Alguacil de este Tribunal incautar inmediatamente la totalidad de la obra y el sello notarial de la licenciada Vélez Torres y entregarlos al Director de la Oficina de Inspección de Notarías para el correspondiente examen e informe. En virtud de su suspensión inmediata del ejercicio de la notaría, la fianza que garantiza las funciones notariales, de haber prestado la misma, queda automáticamente cancelada. Dicha fianza se considerará buena y válida por tres (3) años después de su terminación, en cuanto a los actos realizados durante el periodo en que ésta estuvo vigente.

Notifíquese personalmente esta Opinión *Per Curiam* y Sentencia a la Lcda. Elaine M. Vélez Torres a través de la Oficina del Alguacil de este Tribunal.

Se dictará Sentencia en conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

Elaine M. Vélez Torres       AB-2020-48       Conducta
   (TS-12,858)                                 Profesional

SENTENCIA

En San Juan, Puerto Rico a 23 de junio de 2022.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte íntegra de la presente Sentencia, decretamos la suspensión inmediata de la Lcda. Elaine M. Vélez Torres del ejercicio de la notaría por un término de tres (3) meses.

De igual forma, se le apercibe de su deber de observar de forma escrupulosa los principios éticos que se recogen en el Código de Ética Profesional, así como las disposiciones de la Ley Notarial y la Ley Hipotecaria vigentes. Asimismo, le apercibimos que en el futuro deberá actuar con mayor diligencia en el descargo de su deber como notaria. También le apercibimos que, de incurrir en otro acto que contravenga las normas antes mencionadas, estará sujeta a sanciones disciplinarias mucho más severas. Se le ordena, además, a realizar a sus expensas todos los trámites necesarios para viabilizar la inscripción de la Escritura Núm. 10 que autorizó el 29 de diciembre de 2000.

También se le impone a la licenciada Vélez Torres el deber de notificar a todos sus clientes sobre

su inhabilidad para continuar representándolos y devolverles tanto los expedientes como los honorarios recibidos por trabajos de índole notarial no realizados. De igual manera, tendrá que informar de su suspensión a cualquier agencia, entidad, foro judicial o administrativo en el que tenga algún asunto de índole notarial pendiente. Deberá acreditar y certificar ante este Tribunal el cumplimiento con lo anterior, incluyendo una lista de los clientes y los foros a quienes le notificó de su suspensión, dentro del término de treinta (30) días, contado a partir de la notificación de esta Opinión *Per Curiam* y Sentencia. No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la notaría cuando así lo solicite.

De otra parte, se ordena al Alguacil de este Tribunal incautar inmediatamente la totalidad de la obra y el sello notarial de la licenciada Vélez Torres y entregarlos al Director de la Oficina de Inspección de Notarías para el correspondiente examen e informe. En virtud de su suspensión inmediata del ejercicio de la notaría, la fianza que garantiza las funciones notariales, de haber prestado la misma, queda automáticamente cancelada. Dicha fianza se considerará buena y válida por tres (3) años después de su terminación, en cuanto a los actos realizados durante el periodo en que ésta estuvo vigente.

Notifíquese personalmente esta Opinión *Per Curiam* y Sentencia a la Lcda. Elaine M. Vélez Torres a través de la Oficina del Alguacil de este Tribunal.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Estrella Martínez no intervinieron.


Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo